## RUSSELL, Inc. v. OPER, et ux.
No. 65-C-6513.

Circuit Court, Dade County.

June 2, 1966.

Nicholas Capuano, Lurie & Capuano, Miami, for plaintiff.

Philip Bloom, North Miami, for defendants.

JAMES LAWRENCE KING, Circuit Judge.

*Findings and supplemental decree of foreclosure:* The court has carefully considered all the pleadings filed in this cause and all the testimony and proofs submitted at the trial.

The court finds that on June 14, 1965, the plaintiff filed a complaint to foreclose its mechanic's lien against the defendants.

The defendant owners moved to dismiss on the grounds that the complaint failed to state a cause of action against either of the defendants and that the complaint failed to state a claim for relief in behalf of the plaintiff against either of the defendants. No other grounds for dismissal were alleged. However, at the hearing on the defendants' motion, counsel for the defendants orally argued as grounds for the dismissal of the plaintiff's complaint that the plaintiff lienor did not serve on the defendant owners of the property a statement under oath in accordance with the provisions of §84.061(3)(d)1, Florida Statutes, prior to the filing of the complaint.

§84.061 *(Liens of persons not in privity; proper payments)* provides that when the final payment under a direct contract becomes due the contractor shall give to the owner an affidavit stating, if that be the fact, that all lienors have been paid in full or, if the fact be otherwise, showing the name of each lienor who has not been paid in full and the amount due or to become due each for labor, services or materials furnished. The section further provides that the contractor shall have no lien or right of action against the owner for labor, services or materials furnished under the direct contract while in default by reason of not giving the owner such affidavit, and that the contractor shall execute said affidavit and deliver it to the owner at least five days before instituting suit as a prerequisite to the institution of any suit to enforce his lien under this chapter.

At the hearing counsel for the plaintiff urged that §84.051 of the statutes contains an exception for a person *who contracts directly with the owner,* and provides ". . . No lienor under this section shall be required to serve a notice to owner as provided in §84.061(2), Florida Statutes", and hence that the provisions of §84.061 were not applicable.

According to the allegations of the plaintiff's complaint — upon motion to dismiss for failure to state a cause of action all allegations well pleaded are admitted — the plaintiff was in direct privity with the defendant owners. Therefore, assuming the allegations of the complaint to be true, as the court must for the purpose of the motion, the motion to dismiss admits the furnishing of the materials and the performance of the labor services to the defendant owners. Accordingly, the motion to dismiss was denied.

In this case, it was even unnecessary that any notice of the claim of lien be filed, although such claim of lien was filed for record on June 3, 1965, and the defendants served with such notice. See Maule Industries, Inc. v. Trugman, Fla., 59 So.2d 27, which is controlling on these points.

With full knowledge of this, the defendants answered the plaintiff's complaint setting forth a general denial, but admitting — (a) that the defendant Arnold A. Oper did contract with the plaintiff corporation whereby the plaintiff agreed to provide complete landscaping and caretaking services for defendants' residence; (b) that the plaintiff provided materials, labor and services some time during the period January 4 to March 12, 1965; and (c) that the defendants refused to pay the amount claimed by the plaintiff.

The defendants' answer contained a counterclaim (upon the same contract) alleging that the plaintiff agreed to provide the mentioned services in exchange for the furnishing by the defendant Arnold A. Oper to plaintiff, of noncompensatory medical services for the employees of plaintiff corporation and their families.

Generally it may be said that where the owner contracts directly with one whose only obligation is to alone render personal services incident to the improvement, or with a materialman whose only obligation is to furnish materials to the project, and if the contract is one which under customary business practices excludes the notion that the services of a subcontractor are likely in order to consummate it, (such as Russell, Inc., in the case at bar), then the rule stated in Maule Industries, supra, and followed in Orange Plumbing & Heating Co. v. Wolfe, 89 So.2d 671 (Fla. 1956), is applicable and does not do violence to the legislative intent expressed by §84.061(3) because the defendant owners could not be and were not adversely affected. The sworn statement is not necessary to the acquisition of the lien but operates to protect the owner against the possibility of paying more than once for the same items of labor or materials.

In a given case (such as the case at bar), the defendant property owners may waive the right to the statutory sworn statement and may even become estopped to require the statement. The rule of

reason applies here, as elsewhere in the law. So it is as here, that where the contract by its very nature is one that cannot entail the services of a subcontractor or the furnishing of labor or materials by another, the sworn statement could not serve any useful purpose and would have not been required.

The defendants allowed the cause to proceed for more than ten months because of the allegations of their counterclaim; and throughout the dealings hereunder, the defendant owner Arnold A. Oper was directly in privity with the plaintiff. The court further finds that since the statute contains an exception for a person who contracts directly with the owner, and that the established facts and evidence at the trial upon the merits meet the test by which to create the exception, no sworn statement was necessary in this suit.

The court is of the opinion and finds that the equities of this suit are with the plaintiff; that the court has jurisdiction of the subject matter hereof and of the parties hereto and that it has been proved by a preponderance of evidence — (a) that the defendants, Arnold A. Oper and Eileen A. Oper, his wife, are indebted to the plaintiff, Russell, Inc., a Florida corporation, in the sum of $3,011.17 for materials, services and labor furnished by the plaintiff corporation (for the purchase and planting of certain shrubberies, plants, trees, including but not limited to landscaping, servicing, trimming, fertilizing, spraying, leveling and grade filling placed and planted on the property of the defendants) which property is described as follows — lot 1, block 5, Highland Woods #2, according to the plat thereof recorded in plat book 68, page 33 of the public records of Dade County, Florida, a/k/a 2045 N. E. 179th Terrace, Miami, Dade County, Florida; (b) that no part of such indebtedness of $3,011.17 has been paid; (c) that to secure the payment of such indebtedness the plaintiff corporation has a lien on the mentioned property hereinabove described; (d) the defendants contend, but have failed to prove, and I find no evidentiary basis, nor was any competent evidence whatever submitted in support of the averment that there was a legal, binding and enforceable agreement or contract by which the plaintiff corporation expressly or impliedly authorized any employee or any other person, to provide complete landscaping at the mentioned premises, in exchange for the furnishing without charge, by the defendant, Dr. Arnold A. Oper, of noncompensatory medical services and medical advice for the employees of the plaintiff corporation and their families. It is inconceivable to the court that the defendant, Dr. Arnold A. Oper, would have provided unlimited medical services to the plaintiff corporation as he admitted in his testimony could have conceivable amounted to $25,000 in exchange for landscaping and caretaking for the six month period.

The court further finds that Mr. Charles Gross, one of the plaintiff's employees, may have orally agreed to provide Dr. Oper lawn maintenance service only (notwithstanding evidence to the contrary), although such oral agreement is extremely vague.

Mr. Gross' testimony reflects that Dr. Oper was charged $80 per month for lawn maintenance rather than $130 per month based on the particular size of his property and the area involved, in exchange for which Dr. Oper was to furnish minor medical services to certain employees of the plaintiff corporation, the reasonable value of such services the court finds to be $50 per month for six months or a total of $300. The court further finds that the plaintiff corporation having given and allowed Dr. Oper the mentioned reduction of $50 per month for three months of the mentioned six month period, (which it had ostensibly agreed and obligated itself to do), the sum of $150 is to be deducted from the indebtedness due to the plaintiff corporation.

Unfortunately, there is no written evidence of the agreement as alleged by the defendants. If such an agreement had been drawn and executed, as could and should have been done, one of the major problems produced by this litigation would have been obviated.

The court finds it unnecessary to review at length the character and extent of the services rendered by the attorneys for the plaintiff in this cause, except to say that the amount allowed is within the limits set by the uncontradicted expert testimony introduced by the plaintiff corporation ranging from $3,000 to $5,100. In any action brought to enforce a lien under chapter 84, Florida Statutes, the prevailing party is entitled to recover a reasonable fee for the services of his attorney, and the court finds that the reasonable value of such services is $3,500, and such fee is taxed as a part of the costs of this suit.

Accordingly, it is ordered, adjudged and decreed that the plaintiff's motion for the entry of a supplemental decree of foreclosure be, and the same is hereby granted and that the defendants be, and they are, required to pay the sum of $2,861.17 ($3,011.17 less $150, which the court finds to be the unpaid amount due it by the defendants for labor and materials furnished by the plaintiff corporation in effecting certain improvements to the described real property), together with interest in the sum of $213.65 from March 12, 1965 (the date the last items of materials were furnished and such services and labor were performed) to the date of this decree, together with costs, heretofore taxed, in the sum of $232.

The court finds that the lien of the plaintiff upon the property hereinabove described, is prior, superior and paramount to all rights, claims, liens, interests, encumbrances and equities therein

140

of the defendants and all persons claiming through or under them since the filing of the lis pendens and the suit to foreclose the mechanic's lien herein.

Unless the defendant shall, within three days from the entry of this decree, pay to the plaintiff the sum of $6,806.82 (the total sum of money found by this court to be due the plaintiff) then the above-mentioned and described property shall be sold by E. B. Leatherman, as clerk of the above-styled court to the highest bidder for cash at public sale at the south front door of the courthouse at Miami, Dade County, Florida, on the_____day of_____, 1966, at noon of that day, the same being not less than ten days nor more than thirty days from the date of this decree, free and clear and discharged of and from any and all claims, liens, encumbrances, rights, equities and interests of the defendants and any and all persons, firms or corporations claiming by, through or under them since the filing of the lis pendens and the suit herein; that the said sale shall be held by the clerk upon the terms and conditions as provided herein and that notice of such sale shall be published once only at least seven days prior to the sale in a newspaper circulating in Dade County, Florida, to-wit, the Miami Review and Daily Record.

The plaintiff shall advance the costs of publishing the notice of sale and the clerk's fee of $10 for making the sale, such sums to be assessed as costs. The plaintiff shall be reimbursed for such costs by the clerk out of the proceeds of the sale if the plaintiff shall not become the purchaser of the property at the sale.

The plaintiff may be the bidder for the purchase of the property at the sale and if the plaintiff shall be the purchaser at the sale, the clerk shall credit, as cash, on the bid of the plaintiff, the total sums herein found to be due to the plaintiff, or such portions thereof as may be necessary to pay fully the bid of the plaintiff; except the sum set forth in the preceding paragraph of this decree must be paid in cash.

After the sale of the mentioned and described property, the clerk shall promptly complete and file in these proceedings his certificate of sale.

If no objections to such sale be filed within ten days after the filing of such certificate of sale, the clerk shall thereupon complete and file his certificate of title.

Upon the filing of the certificate of title, the sale shall stand confirmed as certified by the clerk and title to the property shall pass fully and completely to the purchaser named in such certificate, without the necessity of any further proceedings or instruments.

Upon the filing of a certificate of title, the clerk shall disburse the proceeds of the sale in accordance with the provisions of this final decree of foreclosure, and shall thereupon file his report of such disbursements.

The clerk shall make distribution of the proceeds of the sale as follows —

(a) The clerk shall retain his fee for making the sale and pay all costs and expenses of these proceedings subsequent to the entry of this final decree, including the cost of publishing the notice of sale, unless the plaintiff having already paid for these two items of costs, shall be the purchaser at the sale.

(b) Pay the costs of the federal and state documentary stamps affixed to the certificate of title based upon the amount bid for the property plus the costs, as paid for by the purchaser.

(c) Pay to Messrs. Lurie & Capuano, the attorneys for the plaintiff, the attorneys' fee herein allowed.

(d) Pay to the plaintiff herein such sums of money which the court has by this decree found to be due and owing to the plaintiff, together with interest thereon from the date of this decree to the date of sale.

If the sum realized from the sale exceeds the total of the sums ordered to be paid by this decree, the excess shall be paid into the registry of the court and shall thereafter be disbursed as this court shall hereafter direct. If the total amount realized shall be insufficient to pay all of those sums due, the clerk shall pay first those items specified and lettered (a), (b), and (c) in the immediately preceding paragraph, and shall thereafter pay the balance to the plaintiff and report such deficiency to the court.

Upon the confirmation of the sale, whether by the clerk filing his certificate of title herein or by order of the court ruling upon objections to the sale or disbursements of the sale by the clerk, the defendants, except as hereinafter set forth in this decree, and any and all persons claiming by, through or under the defendants since the date of the filing of the lis pendens herein are forever barred and foreclosed of and from any and all right, title, interest, claim or demand of any kind or nature whatsoever, or equity and redemption of, in and to the hereinabove described property, and the purchaser at the sale, his or its representatives or assigns shall be let into immediate possession of such property.

The court retains jurisdiction of the cause for the purpose of entering such further orders and decrees as shall be necessary to effectuate the provisions of this decree.